JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Rumaldo Maza Maza

## DEFENDANTS

Patrica Hyde, Joseph McDonald, Michael Krol, Todd Lyons, Kristi Noem, Pamela Bondi

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Michael Nam-Krane PO BOX 301217 Boston, MA 02130
617.699.4121

Attorneys *(If Known)*
Mark Sauter or Ray Farquhar AUSA

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question *(U.S. Government Not a Party)* |
| ☒ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☒ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** — **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane — ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability — Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & — ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander — Pharmaceutical Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' — Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability — ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 340 Marine — | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability — **PERSONAL PROPERTY** | | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle — ☐ 370 Other Fraud | **LABOR** | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle — ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | Product Liability — ☐ 380 Other Personal | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | ☐ 360 Other Personal Injury — Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| | ☐ 362 Personal Injury - Medical Malpractice — ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** — **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights — **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting — ☒ 463 Alien Detainee | | | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment — ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations — ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment — ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other — **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education — ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | ☐ 550 Civil Rights | | | |
| | ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from Another District *(specify)*  ☐ 6 Multidistrict Litigation - Transfer  ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 2241

Brief description of cause:
Petition to secure release of asylum seeker from ICE custody

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*  JUDGE _____  DOCKET NUMBER _____

DATE  8/31/2025

SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. Title of case (name of first party on each side only) Rumaldo Maza Maza v. Patricia Hyde et al

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.   (See local rule 40.1(a)(1)).

   ☐  I.    160, 400, 410, 441, 535, 830*, 835*, 850, 880, 891, 893, R.23, **REGARDLESS OF NATURE OF SUIT.**

   ☐  II.   110, 130, 190, 196, 370, 375, 376, 440, 442, 443, 445, 446, 448, 470, 751, 820*, 840*, 895, 896, 899.

   ☑  III.  120, 140, 150, 151, 152, 153, 195, 210, 220, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 367, 368, 371, 380, 385, 422, 423, 430, 450, 460, 462, 463, 465, 480, 485, 490, 510, 530, 540, 550, 555, 560, 625, 690, 710, 720, 740, 790, 791, 861-865, 870, 871, 890, 950.

   *Also complete AO 120 or AO 121. for patent, trademark or copyright cases.

3. Title and number, if any, of related cases.  (See local rule 40.1(g)).  If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

   NA

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

   YES ☐    NO ☑

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC §2403)

   YES ☐    NO ☑

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

   YES ☐    NO ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

   YES ☐    NO ☑

7. Do all of the parties in this action, excluding governmental agencies of the United States and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

   YES ☑    NO ☐

   A.   If yes, in which division do all of the non-governmental parties reside?

   Eastern Division ☑    Central Division ☐    Western Division ☐

   B.   If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

   Eastern Division ☐    Central Division ☐    Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court?  (If yes, submit a separate sheet identifying the motions)

   YES ☐    NO ☑

**(PLEASE TYPE OR PRINT)**
**ATTORNEY'S NAME** Michael A. Nam-Krane
**ADDRESS** PO BOX 301218 Boston, MA 02130
**TELEPHONE NO.** 617.699.4121

(CategoryForm11-2020.wpd )

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

———————————————————————————
                                         )

**RUMALDO MAZA MAZA**              )
           **Petitioner**       )

  **v.**                             )
                                   )     **Civil Action No** 25-cv-12407

**PATRICIA HYDE, Field Office Director;**  )
**JOSEPH MCDONALD JR., Sheriff of Plymouth**  )
**County; MICHAEL KROL, HSI New England Special**  )
**Agent in Charge; TODD LYONS, Acting**  )
**Director U.S. Immigrations and Customs**  )
**Enforcement; and KRISTI NOEM, U.S. Secretary**  )
**of Homeland Security, PAMELA BONDI U.S. A.G.**  )
           **Respondents**           )
———————————————————————————)

## PETITION FOR WRIT OF HABEAS CORPUS
## PURSUANT TO 28 U.S.C. § 2241
**(Expedited Consideration Requested)**

## INTRODUCTION

This case involves the question of whether a regulation permitting

the Department of Homeland Security (DHS) to unilaterally detain a

person without any procedural safeguards and potentially for months

*after* an Immigration Judge (IJ) has ordered their release is

unconstitutional as applied to Petitioner, and an exercise of power far

beyond any Congressional grant of authority.  For the reasons which

follow, the Court should find that 8 C.F.R. § 1003.19(i)(2) (the

"automatic stay" provision) is (1) unconstitutional as applied to

Petitioner, resulting in his confinement without due process and in

1

service of no legitimate governmental purpose;[1] and (2) *ultra vires*, putatively authorizing DHS to detain individuals in circumstances where Congress has granted no such authority.

<u>The Regulation Violates the Petitioner's Right to Due Process</u>

Petitioner Rumaldo Maza Maza is a noncitizen from Ecuador. On August 4, 2025, an IJ granted his release from the Plymouth County Correctional Facility with the condition of posting a $1,500 bond. (**EXHIBIT 1**(IJ Bond Order)). This bond decision reflected the IJ's determination, after an evidentiary hearing at which DHS was afforded every opportunity to present its case, that Mr. Maza Maza posed neither a flight risk nor a threat to others. The IJ's conclusion is unsurprising. Mr. Maza Maza has strong ties to his community. (**EXHIBIT 3 & 8**) He has no criminal convictions. (**EXHIBIT 2 & 3**(Petitioner's August 2025 Bond Motion and Supporting Documentation)). Indeed, his only interactions with the judicial system

---

[1] *See Günaydin v. Trump*, No. 25-CV-01151 (JMB/DLM), 2025 U.S. Dist. LEXIS 99237, at *27 (D. Minn. May 21, 2025) ("In conclusion, all three *Mathews* factors favor [the petitioner's] position, and the Court concludes the automatic stay regulation at § 1003.19(i)(2) violates [the petitioner's] procedural due process rights under the Fifth Amendment.")

have involved traffic related charges. (**EXHIBIT 4** (civil infraction for unlicensed operation)).

The IJ's determination earlier this month that Mr. Maza should be released on bail was in fact the *second* time that an immigration judge had reached that conclusion in the space of five weeks. On June 26, Mr. Maza had been ordered released from a prior detention on a bond of $15,000.

Despite the IJ's determination that Mr. Maza Maza should be released upon the posting of his bond, however, Petitioner was *not* released. Instead, Mr. Maza Maza remained in detention because Respondents filed Form EOIR-43, a notice of intent to appeal the IJ's bond decision, with the Immigration Court within one business day, triggering an automatic stay of release under 8 C.F.R. § 1003.19(i)(2). (**EXHIBIT 5** (Form EOIR-43)). Subsequently, Respondents appealed the IJ's bond decision to the Board of Immigration Appeals (BIA). By virtue of DHS's filing of Form EOIR-43 and its appeal of the IJ's decision, the automatic stay of Petitioner's release will now be continued while the government's appeal is pending before the BIA. (**EXHIBIT 6** (DHS's Notice of Appeal)); *see* 8 C.F.R. § 1003.19(i)(2)

("any order of the immigration judge authorizing release (on bond or otherwise)...shall remain in abeyance pending decision of the appeal by the Board"). *See also* 8 C.F.R. § 1003.6(c). As a practical matter, this means that Petitioner, with no showing by the government that the decision ordering his release is likely to be reversed or that Mr. Maza Maza poses any risk of flight or of harming others, will continue to be confined throughout DHS' appeal, a process likely to take months to complete. *See Gomes v. Hyde, et al.,* No. 1:25-cv-11571-JEK (D.Mass. July 7, 2025), at 10 ("According to data released by the Executive Office for Immigration Review, the average processing time for bond appeals exceeded 200 days in 2024.").

It is well-settled that the Petitioner has due process rights under the Fifth Amendment of the Constitution. *Trump v. J.G.G.*, 604 U. S. ---145 S. Ct. 1003, 1006 (2025) (per curiam)(recognizing noncitizens' rights to due process). And there can be no question that freedom from confinement is one of the core interests safeguarded by the Due Process clause. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 28 (1st Cir. 2021) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that

[the Due Process] Clause protects.").  This Court's due process "inquiry is guided by the three-part balancing test articulated in *Mathews v. Eldridge*[,]" 424 U.S. 319, 335 (1976).  *Id.* at 27.

*Mathews* calls upon the Court to consider, first, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of that interest through the procedures used and the probable value of additional or substitute procedural safeguards; and, finally, the Government's interest, including the burdens that additional or substitute procedural requirements would entail. *Mathews, supra* at 332-335. All three *Mathews* factors weigh heavily in Petitioner's favor.

*First*, "[t]here is no question that [Petitioner] suffer[s] a substantial deprivation of liberty" who remains in detention "alongside criminal inmates at the [local] County Jail[.]" *Hernandez-Lara*, 10 F.4th at 28; *Günaydin v. Trump*, No. 25-CV-01151 (JMB/DLM), 2025 U.S. Dist. LEXIS 99237 (D.Minn. May 1, 2025), at *20-21 (similar analysis).

*Second*, the automatic stay of release regulation, 8 C.F.R. § 1003.19(i)(2) "creates a substantial risk of erroneous deprivation of a detainee's interest in being free from arbitrary confinement",

particularly as "the automatic stay regulation includes no requirement that the agency official invoking it consider any individualized or particularized facts[.]" *Günaydin*, 2025 U.S. Dist. LEXIS 99237, at *21-23. Indeed, the risk of erroneous deprivation through an agency official's unilateral decision - without any required application of a legal standard to specific facts (much less an opportunity for detained individual to present arguments or evidence after notice of the intended action) - is even more substantial than would arise from placing the burden of proof on the detained individual, the practice condemned in *Hernandez-Lara*. *See Hernandez-Lara*, 10 F.4th at 31 ("proving a negative (especially a lack of danger) can often be more difficult than proving a cause for concern").

*Third*, while "prompt execution of removal orders is a legitimate government interest...which detention may facilitate," the government's interest is less compelling, if it exists at all, in the case of Petitioner, who has already been determined to pose no risk of failing to appear or of harming others. *Id*. at 32-33. Indeed, "limiting the use of detention to only those noncitizens who are dangerous or a flight risk may save

the government, and therefore the public, from expending substantial resources on needless detention." *Id*. at 33.

Because "the automatic stay regulation at § 1003.19(i)(2) violates [Petitioner's] procedural due process rights under the Fifth Amendment[,] [t]he Court [should] order[] [Petitioner's] immediate release." *Günaydin*, 2025 U.S. Dist. LEXIS 99237, at *27; See also *Maldonado v. Olson*, No. 25-cv-3142 (D.Minn. August 15, 2025); and *Anicasio v. Kramer*, No. 4:25cv3158 (D.Neb. August 14, 2025)(finding the automatic stay to be an unlawful deprivation of a detained immigrant's rights).

<u>The Regulation Is *Ultra Vires*</u>

In addition to its constitutional infirmity as applied to Mr. Maza Maza, the automatic stay provision unlawfully arrogates to DHS broad powers which Congress has afforded only to the Attorney General, and which the Attorney General has in turn delegated only to the immigration judges responsible for determining the grant, or the withholding, of bond. Here, of course, the actor lawfully authorized to use that authority, the immigration judge, has determined that Mr. Maza Maza should be released. Neither Congress nor common sense

permits DHS to usurp that authority and to reverse the considered decision resulting from its proper exercise.

Petitioner further alleges as follows:

## **PARTIES**

1.  Petitioner **Rumaldo Maza Maza** is a noncitizen from Ecuador who is currently detained by Respondents at the Plymouth County House of Corrections in Plymouth, MA.

2.  Respondent, **Patricia Hyde**, is the New England Field Office Director for U.S. Immigration and Customs Enforcement which is the agency that apprehended and detained the Petitioner. The Respondent's principal place of business is located in Burlington, MA where, on information and belief, the Petitioner was initially detained.

3.  Respondent, **Joseph McDonald, Jr.**, is the Sheriff of Plymouth County, the facility where the Petitioner is currently detained. The Plymouth County House of Corrections is located at 26 Long Pond Road, Plymouth, MA.

4.    Respondent, **Michael Krol,** is the New England Special Agent in Charge for Homeland Security Investigations for U.S. Immigration and Customs Enforcement.

5.    Respondent, **Todd Lyons,** is the Acting Director for U.S. Immigration and Customs Enforcement.

6.    Respondent, **Kristi Noem,** is the U.S. Secretary of Homeland Security.

7.    Respondent **Pamel J. Bondi** is the United States Attorney General, and she is being sued in her official capacity. She oversees Immigration Judges and the Board of Immigration Appeals. She is also Petitioner's legal custodian.

8.    All respondents are named in their official capacities.

## **JURISDICTION**

9.    This action arises under the Constitution of the United States and the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq*.

10.    This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause).

11.   This Court may grant relief under the habeas corpus statutes, 28
      U.S.C. § 2241 *et. seq.*, the Declaratory Judgment Act, 28 U.S.C.
      § 2201 *et seq.*, and the All Writs Act, 28 U.S.C. § 1651.

## VENUE

12.   Venue is proper because Petitioner is detained by ICE in
      Plymouth, MA. A substantial part of the events or omissions
      giving rise to his claims occurred in this District.

## HABEAS CORPUS

13.   A petitioner is entitled to habeas relief if he demonstrates that his
      detention violates the United States Constitution or federal law.
      28 U.S.C. § 2241.

14.   The Court must grant the petition for writ of habeas corpus or
      order Respondents to show cause "forthwith," unless the petitioner
      is not entitled to relief. 20 U.S.C. § 2243. If an order to show cause
      is issued, Respondents must file a return "within three days
      unless for good cause additional time, not exceeding twenty days,
      is allowed." Id.

15.   The Court has inherent power to release the petitioner pending
      review of his petition. See *Martin v. Solem*, 801 F.2d 324, 329 (8th

Cir. 1986).

## FACTS

16.  Petitioner is 43 years old and from Ecuador.  **EXHIBIT 3**

17.  His fixed address in the United States is in Framingham, Massachusetts. **EXHIBIT 7**

18.  He lives with his wife, and their two children (ages 12 & 13), both born in Ecuador. **(EXHIBIT 3 & 8)**

19.  He entered the United States on or around April 12, 2014, at or near El Paso, Texas, without encountering Immigration and Customs Enforcement (ICE) agents. **(EXHIBIT 2 & 7)**

20.  Mr. Maza Maza had no choice but to flee to the United States to escape criminal persecution from violent gangs in Ecuador. *Id.*

21.  In 2013, he was threatened and violently robbed by a death squad group, the Sombra Negra. *Id.*

22.  He opposed the gangs and their violent and criminal activities. *Id.*

23.  He lived in fear of being harmed as he was receiving death threats if he did not pay the gangs.  *Id.*

24.  Life became unbearable for him, so he had no choice but to flee to the United States.  *Id.*

11

25.    Further, while he lived in the United States, one of his brothers still in Ecuador was beaten in 2019. His other brother, also in Ecuador, was harmed by the gangs in 2022. *Id.*

26.    The Petitioner intends to pursue an I-589, Application for Asylum, for Withholding of Removal, and Protection under Convention Against Torture based on his past persecution from gang members and well-founded fear of future persecution based on his being an Ecuadoran man and his opposition to the use of violence and organized crime. *Id.*

27.    Since his entry, the Petitioner has never had any significant interaction with police or other law enforcement.  *Id.*

28.    He has no criminal record, and clearly possesses strong community ties as the letters of support demonstrate. (**EXHIBIT 3**)

29.    Petitioner only interaction with the judicial system was a civil infraction for unlicensed operation of a motor vehicle, which has been resolved. (**EXHIBIT 4**)

30.    ICE police apprehended the petitioner on or around May 14, 2025, in Maine. (**EXHIBIT 7 & 10**)

31.    The Petitioner was detained by ICE along with his colleagues while on his way to work. He was respectful and complied with the orders given by the ICE officials. (**EXHIBIT 7)**

32.    On June 26, 2025, the IJ conducted a bond hearing under INA § 236(a) (which provides for the possibility of release on bond) and determined that Mr. Maza should be released on bail. During that proceeding, DHS did not object to the IJ's jurisdiction or argue that Respondent was ineligible for bond.

33.    On the contrary, DHS litigated the bond hearing on the merits (addressing flight risk and danger) and raised no claim that Respondent fell under INA § 235(b) detention (from which bail is *not* available).

34.    After considering evidence and arguments, the IJ concluded that Respondent was neither a flight risk nor a danger and granted release on bond under § 236(a) in the amount of $15,000. Respondent's family promptly took steps to post bond, and Respondent was released. (**EXHIBIT 2 & 9**)

35.    Mr. Maza Maza was released on bond on July 1, 2025. (**EXHIBIT 2 & 9**)

36.    On July 25, 2025, the Petitioner was arrested again, this time in New Hampshire, for working without authorization. (**EXHIBIT 10**)

37.    On August 4, 2025, the IJ conducted another bond hearing. (**EXHIBIT 2**)

38.    That same day, after due consideration of the evidence and arguments, the IJ granted release on bond in the amount of $1,500. (**EXHIBIT 1**)

39.    However, Petitioner was not permitted to post the bond because, on August 4, 2025, the Respondents filed Form EOIR 43, Notice of ICE Intent to Appeal Custody Redetermination.  (**EXHIBIT 5**)

40.    This filing triggered the automatic stay of release under 8 C.F.R. § 1003.19(i)(2).

41.    On August 15, 2025, Respondents filed a notice of appeal to the Board of Immigration Appeals (BIA).  (**EXHIBIT 6**)

## LEGAL FRAMEWORK

*42*.    The Due Process Clause of the Fifth Amendment guarantees that no person in the United States shall be deprived of liberty without due process. U.S. Const. Amend. V. These substantive

and procedural due process protections apply to all people,
including noncitizens, regardless of their immigration status.
*Trump v. J.G.G.*, 604, *supra,* U. S. ---145 S. Ct. at 1006 (2025)
("'It is well established that the Fifth Amendment entitles
aliens to due process of law' in the context of removal
proceedings." (quoting *Reno v. Flores*, 507 U.S. 292, 306, 113 S.
Ct. 1439 (1993)). The automatic stay of Rumaldo Maza Maza's
release violates his rights to substantive and procedural due
process.

43.    The automatic stay regulation is also an *ultra vires* regulation
that unlawfully grants authority to DHS that Congress has
delegated only to the Attorney General.

A. Substantive Due Process

*44.*    The Due Process Clause provides heightened protection against
government interference with certain fundamental rights - and
freedom from detention lies at the heart of the Due Process
Clause's protections. Detention by the government violates due
process in civil proceedings *unless* "a special justification . . .
outweigh[s] the individual's constitutionally protected interest

in avoiding physical restraint." *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S. Ct. 2491, (2001).

45.   The automatic stay regulation was originally enacted in October 2001, in response to the September 11 terrorist attacks, without any opportunity for public comment.

46.   Its enactment marked a drastic change in practice. Before the automatic stay, there was only one route to stay an IJ's custody determination: a discretionary stay from the Board of Immigration Appeals (BIA). The Immigration and Nationality Service (DHS's predecessor) was required to demonstrate to the BIA that it was likely to succeed on the merits and would suffer irreparable harm in the interim. The automatic stay provided a second and, for the government, much easier route: simply filing a short Form EOIR-43, leading to continued detention without any need for an adjudicator to weigh in.

47.   The purported purpose of the automatic stay is to protect the public and "enhance agencies' ability to effect removal should that be the ultimate final order in a given case." *Executive Office of Immigration Review; Review of Custody*

*Determination*, 71 Fed. Reg. 57873, 57874 (Oct. 2, 2006).

48.  But in Rumaldo Maza Maza's case, DHS failed to show he is a flight risk or danger to the community. (**EXHIBIT 1**)

49.  After a full hearing, the IJ determined that Rumaldo Maza Maza is not a danger or substantial flight risk. *Id.* To the extent the government has concerns about safety or flight, the IJ already addressed them.

50.  The government has no special or compelling justification to continue detaining Rumaldo Maza Maza, and certainly not an interest that outweighs his interest in avoiding government restraint. *See Zavala v. Ridge*, 310 F. Supp. 2d 1071, 1077 (N.D. Cal. 2004) ("The regulation, which permits unilateral government detention of individuals without a case-by-case determination after a reasoned finding that they do not pose threat to safety or a risk of flight, violates the Due Process Clause because no special justification exists that outweighs the individual's constitutionally protected interest in avoiding physical restraint."); *Ashley v. Ridge*, 288 F. Supp. 2d 662, 669 (D.N.J. 2003) ("[T]he Government has not shown that

any 'special justification' exists which outweighs Petitioner's constitutional liberties so as to justify his continued detention without bail.").

51. Finally, a less-restrictive means exists through which DHS can obtain a stay: the discretionary stay regulation by which DHS may seek an emergency stay from the BIA. 8 C.F.R. § 1003.19(i)(1). That regulation protects DHS's interest in obtaining a stay without unduly infringing on Rumaldo Maza Maza's liberty. *See*, *e.g.*, *Dep't of State v. Munoz*, 602 U.S 899, 910 (2024) ("When a fundamental right is at stake, the government can act only by narrowly tailored means that serve a compelling state interest.").

52. The government's application of the automatic stay regulation and continued detention of Rumaldo Maza Maza violate his substantive due process rights.

B. Procedural Due Process

53. Due process also requires an opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 902 (1976). Rumaldo

Maza Maza received no such opportunity: although he received a full bond hearing in front of the IJ, the government's unilateral stay of the IJ's order rendered that hearing meaningless.

54. To determine whether government conduct violates procedural due process, the Court weighs three factors: (1) the private interest affected by the government action; (2) the risk that current procedures will cause an erroneous deprivation of the private interest, and the extent to which that risk could be reduced by additional safeguards; and (3) the government's interest in maintaining the current procedures. *Id*. at 335.

## *Private Interest*

55. Rumaldo Maza Maza's private interest is the right to be free from government detention. This interest is of the highest constitutional import.

56. Rumaldo Maza Maza's conditions of detention further tip this factor in his favor. *See Günaydın v. Trump*, F. Supp. 3d _, File No. 25-CV-01151 (JMB/DLM), 2025 WL 1459154, at *7 (D.

19

Minn. May 21, 2025). He is in custody away from his home and family. His family must drive hours to visit him.

57.    Despite being in custody for a civil offense, he is detained with and subject to the same rules as those incarcerated for criminal offenses.

58.    Rumaldo Maza Maza cannot move freely, eat the food that he wants, sleep in his own bed, or spend time with his loved ones. He has very little privacy.

59.    The private interest here is fundamental: freedom from detention. It weighs heavily in the consideration of the *Mathews* factors.


### *Risk of Erroneous Deprivation*

60.    Similarly, the risk of erroneous deprivation of Rumaldo Maza Maza's liberty is substantial. Rumaldo Maza Maza prevailed at the bond redetermination hearing. The stay is not based on any new evidence, finding of legal error, or finding of likelihood of success on appeal.

61.    Its application permits prosecuting officials who participated in

the adversarial process—and lost—to unilaterally override the adjudicator's decision. "Such a rule is anomalous in our legal system," and it represents a basic conflict that has been disapproved of in this context and others. *Günaydın*, 2025 WL 1459154, at *8; *see also Marcello v. Bonds*, 349 U.S. 302, 305–06, 75 S. Ct. 757 (1955) (holding that officer adjudicating immigration case cannot undertake prosecutorial role in the same matter); *Ashley,* 288 F. Supp. 2d at 671 ("It produces a patently unfair situation by taking the stay decision out of the hands of the judges altogether and giving it to the prosecutor who has by definition failed to persuade a judge in an adversary hearing that detention is justified.") (citation altered).

62.   The automatic stay runs counter to the typical judicial process. A stay is an extraordinary remedy. Even in the civil context, a stay is never granted as of right. Rather, the movant must show a likelihood of success on the merits, a risk of irreparable injury, and that the balance of interests tips in the movant's favor. In contrast, the automatic stay regulation does not

require the government to make any showing to an adjudicator. And here, the risk is significantly greater than in an ordinary civil case. Detention is at issue. Rumaldo Maza Maza is facing a loss of liberty.

63. Rumaldo Maza Maza also has no method to challenge the automatic stay decision. He is at the whim of DHS with no meaningful opportunity for review. Under these procedures, the risk of erroneous deprivation is great.

64. At the same time, there is a readily available substitute procedure that could ameliorate these risks: DHS could seek an emergency discretionary stay from the BIA pursuant to 8 C.F.R. § 1003.19(i)(1).

### *Government Interest*

65. The government's interest here carries little weight in comparison to those of Mr. Maza Maza.

66. The stated purpose of the automatic stay provision is to prevent the noncitizen from fleeing and to protect the public from potential harm. To the extent the government has concerns about safety or flight, the IJ already addressed them (and

specifically determined that those risks were not sufficient in the Petitioner's case to justify continued detention).

67.     On balance, the private interests affected and the risk of erroneous deprivation under the current procedures greatly outweigh the government's interest. Process is not meaningful when the government who loses in front of an IJ can unilaterally override the IJ's decision. *See Ashley*, 288 F. Supp. at 668 ("[T]he automatic stay provision renders the Immigration Judge's bail determination an empty gesture.").

C.  Ultra Vires

68.     The automatic stay regulation exceeds the authority given to the Attorney General by Congress and unlawfully eliminates IJs' discretionary authority to make custody determinations.

69.     Congress granted the Attorney General discretion to decide whether to release detained noncitizens pending removal proceedings if they have not been convicted of certain criminal offenses and are not linked to terrorist activities. *See* 8 U.S.C. § 1226(a), (c). The Attorney General has delegated this authority to IJs, who have discretion to determine whether to release

these noncitizens on bond. 8 C.F.R. §§ 1003.19, 1236.1; *see also* 28 U.S.C. § 510 (permitting the Attorney General to delegate her function to officers or employees within the Department of Justice).

70.    Congress has *not* delegated this authority to DHS. There is no statutory authority for DHS to unilaterally stay an IJ's bond determination. DHS's use of the automatic stay is an unlawful use of the discretionary power granted to the Attorney General and "has the effect of mandatory detention of a new class of aliens, although Congress has specified that such individuals are not subject to mandatory detention." *Zavala*, 310 F. Supp. 2d at 1079; *see also Ashley*, 288 F. Supp. 2d at 673 ("As Congress specifically exempted aliens like Petitioner from the mandatory detention of § 1226(c), it is unlikely that it would have condoned this back-end approach to detaining aliens like Petitioner through the combined use of § 1226(a) and § 3.19(i)(2).").

71.    Here, the IJ determined that Rumaldo Maza Maza is not a danger to the community or a sufficient flight risk to warrant

continued detention, and ordered DHS to release him on bond.

## CLAIMS FOR RELIEF

### COUNT 1

**U.S. CONSTITUTION - FIFTH AMENDMENT**
**Violation of Substantive and Procedural Due Process**

72.  The foregoing allegations are realleged and incorporated herein.

73.  The Due Process Clause of the Fifth Amendment to the United

States Constitution provides that "[n]o person shall...be deprived

of life, liberty, or property, without due process of law." U.S.

Const. amend V.

74.  It is undisputed that Petitioner has a right not to be detained

arbitrarily. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 28 (1st Cir.

2021) (any "civil commitment <u>for any purpose</u> constitutes a

significant deprivation of liberty that requires due process

protections") (quoting *Addington v. Texas*, 441 U.S. 418, 425

(1979)) (emphasis in original).

75.  This Court's due process "inquiry is guided by the three-part

balancing test articulated in *Mathews v. Eldridge*[,]" 424 U.S. 319,

335 (1976). *Id*. at 27.

25

76. The Court should find that 8 C.F.R. § 1003.19(i)(2) is unconstitutional as applied to Petitioner, who is neither a danger to the community nor a flight risk. *See Günaydin v. Trump*, No. 25-CV-01151 (JMB/DLM), 2025 U.S. Dist. LEXIS 99237, at *27 (D. Minn. May 21, 2025) ("In conclusion, all three *Mathews* factors favor [the petitioner's] position, and the Court concludes the automatic stay regulation at § 1003.19(i)(2) violates [the petitioner's] procedural due process rights under the Fifth Amendment.").

77. Substantive due process asks whether a person's life, liberty, or property is deprived without sufficient purpose. There is no question that Rumaldo Maza Maza has been deprived of his liberty.

78. The government's continued detention of Rumaldo Maza Maza is not supported by any special interest or compelling justification that outweighs his liberty interest. The application of the automatic stay violates Rumaldo Maza Maza's substantive due process rights.

79. Due process requires the opportunity to be heard at meaningful time and in a meaningful manner. Rumaldo Maza Maza has not received that opportunity here, where the process afforded him – a hearing before an IJ – can be wholly subverted by DHS's unilateral action.

80. Rumaldo Maza Maza's liberty interest and the risk of erroneous deprivation far outweigh the government's interest in continued detention. There is also an alternative process available that allows the government to request a stay from the BIA, a process that is less prone to error and less likely to trample upon constitutionally-protected rights. The automatic stay violates Rumaldo Maza Maza's procedural due process rights.

## COUNT 2

### *Ultra Vires* Regulation

81. Rumaldo Maza Maza realleges and incorporates herein the allegations contained in the preceding paragraphs of the petition as if fully set forth herein.

82. Congress gave the Attorney General authority to detain or release noncitizens, pending their removal proceedings. The

Attorney General has delegated that authority to IJs.

83.    The automatic stay regulation, 8 C.F.R. § 1003.19(i)(2), purports

to give DHS the authority to unilaterally override the IJ's

decision. It is unlawful and *ultra vires*.

## PRAYER FOR RELIEF

Petitioner asks that this Court grant the following relief:

(1.)    Assume jurisdiction over this matter;

(2.)    Order, on an emergency basis, that Petitioner shall not be
transferred outside the District of Massachusetts until further
notice from this Court;

(3.)    Issue an Order to Show Cause requiring Respondents to show
cause why this Petition should not be granted within three days;

(4.)    Declare that the Petitioner's detention violates the Due Process
Clause of the Fifth Amendment;

(5.)    Issue a Writ of Habeas Corpus directing Respondents to
immediately release Petitioner upon payment of the $1,500 bond
provided for in the IJ's order"

(6.)    Award Petitioner attorney's fees and costs under the Equal Access
to Justice Act, and on any other basis justified under law; and

(7.)    Order any further relief this Court deems just and proper.

Respectfully submitted,
RUMALDO MAZA MAZA

By his attorneys,

/s/ Michael A. Nam-Krane
Michael A. Nam-Krane (BBO #636003)
PO BOX 301218
Boston, MA 02130
Phone 617.699.4121
Fax: 617.344.3099
michael@bostonjustice.net


/s/ Peter L. Ebb
Peter L. Ebb (BBO # 556987)
3 Curve Street
Wellesley MA 02482
Phone 508.596.1862
sebastiancoe1234@gmail.com