UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RUMALDO MAZA MAZA,<br><br>Petitioner,<br><br>v.<br><br>PATRICIA HYDE Field Office Director, JOSEPH D. MCDONALD, JR., Sheriff of Plymouth County, MICHAEL KROL, HSI New England Special Agent in Charge, TODD LYONS, Acting Director U.S. Immigrations and Customs Enforcement, KRISTI L. NOEM, U.S. Secretary of Homeland Security, and PAMELA BONDI, U.S. Attorney General,<br><br>Respondents. | Civil Action No. 1:25-cv-12407-IT |

MEMORANDUM & ORDER

October 20, 2025

TALWANI, D.J.

Pending before the court is Petitioner Rumaldo Maza Maza's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Doc. No. 1]. Petitioner asserts that his detention under 8 C.F.R. § 1003.19(i)(2) (the "automatic stay regulation") violates his constitutional right to due process and that the regulation is *ultra vires* where it allows the Department of Homeland Security ("DHS") to exercise authority that Congress has granted to the Attorney General. For the reasons set forth below, the Petition [Doc. No. 1] is GRANTED.

I.   **Statutory and Regulatory Background**

Section 236 of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1226, "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings[.]" Jennings v. Rodriguez, 583 U.S. 281, 289 (2018). Section 1226(a) provides for discretionary detention: "On a warrant issued by the Attorney General, an alien may

be arrested and detained pending a decision on whether the alien is to be removed from the United States," and the Attorney General "may continue to detain the arrested alien" or release the alien on bond pending that decision. 8 U.S.C. § 1226(a)(1)–(2).

An individual detained under Section 1226(a) may move for a custody redetermination by an Immigration Judge. See 8 C.F.R. § 1236.1(d)(1). The Immigration Judge may "exercise the authority in section [1226]" to detain the individual or release the individual "and determine the amount of bond, if any, under which the [individual] may be released." Id. The Immigration Judge may order detention only if the government (1) proves by clear and convincing evidence that the individual poses a danger to the community or (2) proves by a preponderance of the evidence that the individual poses a flight risk. Hernandez-Lara v. Lyons, 10 F.4th 19, 41 (1st Cir. 2021).

The automatic stay provision at issue here provides:

> In any case in which DHS has determined that an alien should not be released or has set a bond of $10,000 or more, any order of the immigration judge authorizing release (on bond or otherwise) shall be stayed upon DHS's filing of a notice of intent to appeal the custody redetermination (Form EOIR–43) with the immigration court within one business day of the order, and, except as otherwise provided in 8 CFR 1003.6(c), shall remain in abeyance pending decision of the appeal by the Board. The decision whether or not to file Form EOIR–43 is subject to the discreton of the Secretary.

8 C.F.R. § 1003.19(i)(2). In other words, the automatic stay regulation provides for the ongoing detention of the individual ordered released on bond where DHS has determined that an appeal is warranted. See Sampiao v. Hyde, 2025 WL 2607924, at *3 (D. Mass. Sept. 9, 2025) (discussing 8 C.F.R. § 1003.19(i)(2)).

The stay lapses if DHS does not file a notice of appeal with the BIA within ten business days of the Immigration Judge's order and a certification "by a senior legal official" that the official (i) approved the filing of the notice of appeal "according to review procedures

2

established by DHS," and (ii) "is satisfied that the contentions justifying the continued detention of the alien have evidentiary support, and the legal arguments are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing precedent or the establishment of new precedent." 8 C.F.R. § 1003.6(c)(1). If DHS preserves the automatic stay, the stay lapses 90 days after the filing of the notice of appeal if the BIA has not issued a decision. See id. § 1003.6(c)(4). However, DHS may seek a discretionary stay of the Immigration Judge's release order beyond the automatic stay period pursuant to 8 C.F.R. § 1003.19(i)(1) by moving for a discretionary stay "at any time after the filing of its notice of appeal of the custody decision, and at a reasonable time before the expiration of the period of the automatic stay." Id. § 1003.6(c)(5). If the BIA does not adjudicate a previously-filed descretionary stay motion by the end of the 90-day automatic stay period, the Immigration Judge's release order remains stayed for up to 30 days while the BIA decides whether or not to grant a discretionary stay. Id.

If the BIA ultimately authorizes the individual's release, denies a motion for a discretionary stay, or fails to act on such a motion before the automatic stay period expires, the individual's release is automatically stayed for an additional five business days. Id. § 1003.6(d). If DHS refers the case to the Attorney General within that period, the individual's release "shall continue to be stayed pending the Attorney General's consideration of the case" for up to 15 business days after the referral. Id. Moreover, "[t]he Attorney General may order a discretionary stay pending the disposition of any custody case by the Attorney General or by the Board." Id.

II.     **Factual Background**

Petitioner is a noncitizen from Ecuador. Pet. ¶ 1 [Doc. No. 1]. He has a fixed address in Framingham, Massachusetts, where he lives with his wife and two children. Id. ¶¶ 17–18; see Pet. Ex. 3 CM/ECF pp. 11–17 [Doc. No. 1-3]. Petitioner entered the United States without

3

inspection on or around April 12, 2014, at or near El Paso, Texas. Pet. ¶ 19 [Doc. No. 1]; see Chan Decl. ¶ 7 [Doc. No. 9-1].

On or about May 14, 2025, U.S. Border Patrol encountered Petitioner during a traffic stop in Farmington, Maine, and detained him. Chan Decl. ¶ 7 [Doc. No. 9-1]. U.S. Immigration and Customs Enforcement ("ICE") took Petitioner into custody on or about May 23, 2025, and detained him at the Northeast Ohio Correctional Center in Youngstown, Ohio. Id. Petitioner moved for a custody redetermination in the Cleveland Immigration Court. See Pet. Ex. 7 [Doc. No. 1-7]. On July 1, 2025, an Immigration Judge granted Petitioner's request for a custody redetermination and ordered him released from custody under a $15,000 bond. Pet. Ex. 3, CM/ECF p. 37 [Doc. No. 1-3]. Both Petitioner and DHS waived their rights to appeal the decision. Id. at CM/ECF p. 38.

On or about July 25, 2025, Homeland Security Investigations ("HSI") agents encountered Petitioner in Littleton, New Hampshire, where he was working as a roofer. Chan Decl. ¶ 12 [Doc. No. 9-1]; see Pet. Ex. 10 at 7 [Doc. No. 1-10]. The agents determined that Petitioner was working in the United States without authorization. Chan Decl. ¶ 12 [Doc. No. 9-1]; Pet. Ex. 10 at 7 [Doc. No. 1-10]. HSI arrested Petitioner without a warrant on the basis that he would be leaving the area to return to his residence in Framingham, which is more than 150 miles away from where HSI encountered him. Pet. Ex. 10 at 7 [Doc. No. 1-10]. Petitioner was transferred into ICE custody the same day and detained at the Strafford County Department of Corrections in Dover, New Hampshire. See id.; Chan Decl. ¶ 12 [Doc. No. 9-1].

On July 29, 2025, Petitioner requested a custody redetermination hearing. Id. ¶ 13. See Pet. Ex. 2 [Doc. No. 1-2]. Petitioner was transferred to Plymouth County Correctional Facility in Plymouth, Massachusetts, on July 31, 2025. Chan Decl. ¶ 14 [Doc. No. 9-1].

4

On August 4, 2025, the Chelmsford Immigration Court granted Petitioner's request for a custody redetermination and ordered him released under bond of $1,500. Pet. Ex. 1 [Doc. No. 1-1]. ICE filed a Notice of ICE Intent to Appeal Custody Determination that same day. Pet. Ex. 5 [Doc. No. 1-5]. On August 7, 2025, ICE lodged additional charges of inadmissibility with the Chelmsford Immigration Court, charging Petitioner as inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I). Chan Decl. ¶ 17 [Doc. No. 9-1]. On August 15, ICE filed a notice of appeal along with "appropriate certification." Id. ¶ 18.

On September 12, 2025, the Chelmsford Immigration Judge issued a Memorandum explaining the decision to order Petitioner's release. Ex. 1 to Pet. Reply, Immigration Judge Memorandum ("IJ Mem.") [Doc. No. 14-1]. The Immigration Judge first found that Petitioner was eligible for a bond hearing as an applicant for admission detained under 8 U.S.C. § 1226(a) where he "was not most recently apprehended at the border, or within the border or ports of entry . . . ." Id. at 3. The Immigration Judge next found that DHS did not demonstrate that Petitioner posed a danger to the community, but did demonstrate by a preponderance of the evidence that Petitioner was a flight risk. Id. at 5. Specifically, although Petitioner "[has] a length of residence in the United States," "a fixed address," and family ties, he had been unlawfully present in the United States "for a length of time" without seeking to regularize his status. Id. at 5–6. Moreover, Petitioner had no request for relief from removal pending before the Immigration Court, and "[a]ny relief would also be speculative[.]" Id. at 6. However, the Immigration Judge found that a $1,500 bond would mitigate Petitioner's flight risk and ensure his appearance at any future hearings. Id.

The appeal of the Immigration Judge's release order remains pending, see Chan Decl. ¶ 18 [Doc. No. 9-1], and Petitioner remains detained.

### III. Discussion

Petitioner contends that his detention under the automatic stay regulation violates his rights to procedural and substantive due process. See Pet. ¶¶ 72-80 [Doc. No. 1]. Petitioner also claims that the automatic stay regulation is unlawful and *ultra vires*. Id. ¶ 83. Respondents contend that his detention is authorized by 8 C.F.R. §§ 1003.19(i)(2) and 1003.6(c)(1), and that the court should not declare ICE's utilization of the automatic stay provision unconstitutional or *ultra vires*. Resp't Opp. 4, 9 [Doc. No. 9].

#### A.   *Procedural Due Process*

"It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." Trump v. J. G. G., 604 U.S. 670, 673 (2025) (internal quotations and citation omitted). Courts analyze due process challenges to civil detention by weighing the three factors articulated in Mathews v. Eldridge, 424 U.S. 319, 335 (1976): (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." See Hernandez-Lara, 10 F.4th at 28; accord Sampiao, 2025 WL 2607924, at *9.

First, the government concedes that the "private interest" at issue here—i.e. Petitioner's interest in freedom from physical detention—is serious. See Resp't Opp. 7 [Doc. No. 9]. Indeed, Petitioner's interest in physical freedom "is the most elemental of liberty interests," Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004), and "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects[,]" Zadvydas v. Davis, 533 U.S. 678, 690 (2001). Moreover,

Petitioner "is experiencing all the deprivations that come with incarceration," Sampiao, 2025 WL 2607924, at *10, including separation from his wife and children, limited freedom of movement, and confinement in a correctional facility where he is "subject to the same rules as those incarcerated for criminal offenses" despite having no criminal conviction himself. Pet. ¶¶ 57–58 [Doc. No. 1]. In light of these circumstances and the fundamental liberty interest at issue, the first Mathews factor weighs in favor of granting the petition. See Hernandez-Lara, 10 F.4th at 28 (concluding deprivation of liberty was "substantial" where noncitizen was "incarcerated alongside criminal inmates" and separated from fiancé); accord Sampiao, 2025 WL 2607924, at *10 (explaining noncitizen's civil detention "alongside individuals convicted of crimes" and separation from wife and son "amplifie[d] the burden effected by his ongoing detention"); Günaydin v. Trump, 784 F. Supp. 3d 1175, 1187 (D. Minn. 2025) (similar); see also Herrera v. Knight, 2025 WL 2581792, at *10 (D. Nev. Sept. 5, 2025) (similar).

Second, there is a significant risk of an erroneous deprivation of liberty under the automatic stay regulation where Petitioner remains detained solely because DHS, the losing party in the proceedings before the Immigration Judge, has filed an appeal of the release order. The automatic stay regulation effectuates detention only of individuals who have already demonstrated to an Immigration Judge's satisfaction that they do not pose a sufficient danger or flight risk to warrant ongoing detention. See 8 C.F.R. § 1003.19(i)(2) ("[A]ny order of the immigration judge authorizing release (on bond or otherwise) shall be stayed upon DHS's filing of a notice of intent to appeal the custody redetermination . . . ."). Consequently, "the automatic stay regulation empowers ICE—the losing party in the bond hearing—to unilaterally override the decision of the [Immigration] Judge and keep the noncitizen detained pending appeal. Such a rule allows the government to bypass its burden of proof at bond hearings and usurp the role of

the Immigration Judge." Sampiao, 2025 WL 2607924, at *10. And although a "senior legal official" must certify that DHS's "contentions justifying the continued detention of the alien have evidentiary support" and that its legal arguments are nonfrivolous in order to preserve the automatic stay, see 8 C.F.R. § 1003.6(c)(1)(ii), the regulation provides no standard to guide that official in making that determination. Ordinarily, to obtain a stay of a judge's order requires a party to, inter alia, make "a strong showing" that it is likely to succeed on the merits of its challenge to that order. Nken v. Holder, 556 U.S. 418, 434 (2009). In contrast, the automatic stay regulation is "effectively a unilateral automatic stay pending appeal as of right afforded to the losing party—the agency official who has just failed to present evidence or argument sufficient to convince a neutral decisionmaker that detention is warranted." Herrera, 2025 WL 2581792, at *10.

Alternative procedures exist to mitigate the risk of an erroneous deprivation. Other regulations allow DHS "to seek a discretionary stay" on an emergency basis from the BIA. 8 C.F.R. § 1003.19(i)(1). This procedure is consistent with the standard set forth in Nken and thus "cures the due process infirmities of § 1003.19(i)(2) while preserving the government's interest in preventing an erroneous release." Günaydin, 784 F. Supp. at 1189. Accordingly, the second Mathews factor weighs in favor of granting the petition.

Respondents suggests that the risk of an erroneous deprivation in this case is low, contending that "the legal support behind ICE's appeal is strong as the BIA recently decided in a precedential decision," Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025), that "8 U.S.C. § 1225(b)(2) mandates detention for individuals, like Petitioner, who have not been admitted to

8

the United States."[1] Resp't Opp. 7–8 [Doc. No. 9]. Setting aside numerous court decisions finding to the contrary, see Doe v. Moniz, 2025 WL 2576819, at *5 (D. Mass. Sept. 5, 2025) (concluding Section 1226, rather than Section 1225, authorizes detention of noncitizens already in the United States and collecting cases), Matter of Yajure Hurtado addressed only the statutory scheme for detention, and did not address due process rights at all. Consequently, even if that decision supports Respondents' statutory argument in support of detention on appeal, it has no bearing on whether Petitioner is currently detained under the automatic stay regulation in violation of his due process rights.

The third Mathews factor also weighs in favor of finding that the automatic stay regulation violates Petitioner's right to procedural due process. Respondents assert that "ICE has an interest in the 'purpose of the automatic stay provision,' which 'is to provide a means for DHS to maintain the status quo in those cases where it chooses to seek an expedited review of the IJ's custody order by [the] BIA.'" Resp't Opp. 8 [Doc. No. 9] (quoting Hussain v. Gonzales, 429 F. Supp. 2d 1024, 1031 (E.D. Wis. 2007)). But this asserted interest is not a strong one where the "status quo" that ICE seeks to protect is the detention of an individual who an Immigration Judge has determined does not pose a public safety threat or a risk of flight sufficient to warrant continued confinement. IJ Mem. 5–6 [Doc. No. 14-1]. Where Respondents contend that "Petitioner's flight risk has increased" in light of the BIA's decision in Matter of

---

[1] In the opinion explaining the release order, the Immigration Judge acknowledged Matter of Yajure Hurtado but noted that "[t]his bond order was issued prior to the Board's decision," and further explained that "the parties agree that [Petitioner] entered the United States unlawfully sometime in 2014, at an unknown place, and was not apprehended by Customs and Border patrol. The parties agree that [Petitioner] was never apprehended by immigration officials until he was recently apprehended twice, on May 14th and July 1st of 2025, respectively, during enforcement operations." IJ Mem. 6 n.3 [Doc. No. 14-1].

9

Yajure Hurtado, they may seek an emergency stay from the BIA on this basis. See 8 C.F.R. § 1003.19(i)(1). However, ICE's interest in continuing Petitioner's confinement notwithstanding a neutral adjudicator's determination that detention is unnecessary to assure Petitioner's presence at future proceedings is insignificant compared to the fundamental deprivation of Petitioner's liberty effectuated by the automatic stay regulation. Cf. United States v. Salerno, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.").

      B.    *Substantive Due Process*

Petitioner also asserts that the automatic stay regulation violates his substantive due process rights where Respondents have not asserted a sufficiently strong justification for his detention. Pet. Reply 5 [Doc. No. 14]. Civil detention violates the Fifth Amendment's Due Process Clause unless "a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." Zadvydas, 533 U.S. at 690 (internal quotation marks and citation omitted). Respondents assert that Petitioner's detention serves to prevent him "from fleeing during removal proceedings" where he has a "strong incentive to abscond," "no lawful status," and no pending claim for relief from removal. Resp't Opp. 6–7 [Doc. No. 9]. But the Immigration Judge accounted for that risk in setting Petitioner's bond. See IJ Mem. 6 [Doc. No. 14-1] ("[T]he Court found that the [Petitioner] warranted a redetermination of his custody status and set a bond amount of $1,500 to ensure [Petitioner's] appearance at any future hearings."). Where the Immigration Judge determined that a $1,500 bond was sufficient to mitigate the risk that Petitioner would flee during removal proceedings, Respondents' interest in securing his presence via detention "in contravention of the order of a neutral fact-finder[] does not outweigh the liberty interest at stake." Jacinto v. Trump, 2025 WL 2402271, at *4 (D. Neb. Aug. 19, 2025).

10

C.    *Ultra Vires*

Petitioner contends that the automatic stay regulation is *ultra vires* because it allows DHS to exercise authority that Congress granted to the Attorney General. See Pet. Reply 7–10 [Doc. No. 14].

The automatic stay regulation exceeds a statutory limitation on delegation of the Attorney General's authority to detain noncitizens under Section 1226. Section 1226(a) allows the Attorney General to detain or release a noncitizen bond pending a removal decision. See 8 U.S.C. § 1226(a). And the Attorney General may delegate "any function" of her office to "any other officer, employee, or agency of the Department of Justice." 28 U.S.C. § 510. Immigration Judges are within the Department of Justice. See 8 U.S.C. § 1101(b)(4). Immigration Judges thus exercise properly delegated authority to make detention and bond decisions. See 8 C.F.R. § 1236.1(d)(1) ("[T]he immigration judge is authorized to exercise the authority in section [1226] . . . to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released.").

However, the automatic stay regulation gives DHS and ICE authority to override an Immigration Judge's bond decision: By filing an appeal and triggering the stay, DHS can effectively determine that an individual's detention is warranted notwithstanding an Immigration Judge's decision to the contrary. But DHS is not within the Department of Justice and is instead a separate executive agency. See 6 U.S.C. § 111(a). Because the automatic stay regulation enables DHS to usurp the Immigration Judge's role in making detention and bond determinations, it exceeds the Congressional limit on the Attorney General's authority to delegate a statutory function. Petitioner has thus established that he is detained pursuant to a regulation that exceeds Congressional authority.

### IV. Conclusion

For the foregoing reasons, the Petition [Doc. No. 1] is GRANTED as follows: Respondents are ORDERED to release Petitioner from the custody of U.S. Immigration and Customs Enforcement immediately upon his posting of the ordered bond, with no additional conditions beyond those imposed by the Immigration Judge in the August 4, 2025 bond order.

IT IS SO ORDERED.

October 20, 2025               /s/ Indira Talwani
                               United States District Judge